IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 15-cv-01456-PAB-MEH

ADAN RIOS,
JAMIE BANUELOS,
JOSE ANGEL GUTIERREZ,
MILTON RANGEL,
LAZARO HERNANDEZ,
HUASCAR POLANCO,
WILMER POLANCO,
LEOPOLDO RODRIGUEZ, and
OSCAR GONZALEZ,
on their own behalf and on behalf of all others similarly situated,

      Plaintiffs,

v.

MIDWEST PARTITIONS, INC.,
D & F PARTITIONS, LLC,
YOLKINS RES/COM DRYWALL, INC.,
ALLEN HALL,
CESAR QUINTANA,
MARCOS GUTIERREZ,
JAVIER MARTINEZ DRYWALL LLC, and
JAVIER MARTINEZ,

      Defendants.

---

## ORDER

---

This matter is before the Court on a Joint Motion for Court Approval of

Settlement.  Docket No. 56.  Plaintiffs and defendants Midwest Partitions, Inc. and Allan

Hall (collectively the "Midwest defendants") request that the Court approve their

settlement of plaintiffs' claims brought pursuant to the Fair Labor Standards Act

("FLSA"), 29 U.S.C. § 201 *et seq*.

## I. BACKGROUND

There are two groups of plaintiffs in this case.[1]  Docket 56 at 2-3.  Group 1 was employed directly by the Midwest defendants to work on drywall projects at two construction sites.  *Id.*  Group 2 was employed by subcontractors to perform work at those same sites.  *Id.*  The parties dispute whether the Midwest defendants were a joint employer of Group 2.  *Id.* at 4.

The complaint alleges that the Midwest defendants and the other defendants failed to pay statutorily required premiums for overtime work – hours worked after forty hours in a work week – at two construction projects in Denver, Colorado.  *Id.*  The Midwest defendants were contracted to install drywall at two Denver construction projects.  *Id.* at 4-5.  The Midwest defendants entered into agreements with several subcontractor defendants, which required those subcontractors to furnish employees with experience installing drywall.  *Id.*  Each plaintiff in Group 1 was an hourly employee, paid by the Midwest defendants.  *Id.*  Each plaintiff in Group 2 was an hourly employee, paid by a subcontractor defendant to perform drywall installation at one of the two construction projects.  *Id.*

None of the subcontractor defendants has answered the complaint or participated in discovery in this lawsuit.  The clerk of the court entered default against

---

[1]  Group 1 consists of Jamie Banuelos, Delfino Cortes, Juan Garcia, Oscar Gonzales, Jose Angel Gutierrez, Efrain Hernandez, Lazaro Hernandez, Silverio Loya, Antonio Martinez, Gerardo Reyes, Adan Rios, Raul Castoreno, Noe Portillo, Omar Ramos, and Gabriel Romero.  Docket No. 56-2.  Group 2 consists of Huascar Polanco, Wilmar Polanco, Milton Rangel, Alejandro Rascon, Javier Rascon, Juan Rascon, Oscar Rascon, and Leopoldo Rodriguez.  Docket No. 56-3.

each of the subcontractor defendants [Docket Nos. 53-55] and the subcontractor

defendants are not parties to the proposed settlement agreement.

The settlement agreement is between the named plaintiffs, individually and "for

others similarly situated," and the Midwest defendants.  Docket No. 56-1.  On March 29,

2016, the magistrate judge conditionally certified a class consisting of "Current and

Former Employees of MIDWEST PARTITIONS, INC. who worked in 2014 and/or 2015

at the construction projects at 1350 Glenarm Place, Denver, Colorado 80202; 360

South Monroe Street, Denver, Colorado or both," and gave class members 30 days

from the mailing of the notice to opt into the class.  *See* Docket Nos. 39, 46.  Exhibits 1

and 2 to the Settlement Agreement list the opt-in plaintiffs and named plaintiffs who are

the beneficiaries of the settlement.  Exhibit 1 identifies eleven individuals in Group 1

and their proposed settlement amounts.  Docket No. 56-2.  Exhibit 2 identifies eight

individuals in Group 2 and their proposed settlement amounts.  Docket No. 56-3.

Under the settlement agreement, the Midwest defendants have agreed to pay

Group 1 premiums for overtime worked and the statutorily described liquidated

damages on such premiums.  *Id*. at 3.  Each Group 1 plaintiff will be compensated

based on the number of hours he worked, and receive a corresponding amount of

liquidated damages.  *Id.*  Therefore, the proposed settlement agreement is not a

compromise as to Group 1.

Because the Midwest defendants do not have payroll records for the Group 2

plaintiffs, they are unable to determine the exact amount owed to each Group 2 plaintiff.

*Id.* at 5.  Instead, the Midwest defendants have agreed to pay the Group 2 plaintiffs

premiums for overtime worked based upon the number of hours each Group 2 plaintiff

alleges he worked.  The Midwest defendants have not agreed to pay liquidated damages to the Group 2 plaintiffs.[2]  Therefore, the proposed settlement is a compromise as to Group 2.

## II.  ANALYSIS

In a suit by employees against their employer to recover back wages under the FLSA, the parties must present any proposed settlement to the district court for review and a determination of whether the settlement agreement is fair and reasonable.  *See Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982). Requiring court approval of FLSA settlements effectuates the purpose of the statute, which is to "protect certain groups of the population from substandard wages and excessive hours . . . due to the unequal bargaining power as between employer and employee." *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706 (1945).

### A.  Final Class Certification

The FLSA  provides that an employee or employees may bring an action "[on] behalf of himself or themselves and other employees similarly situated."  29 U.S.C. § 216(b).  Courts determine whether plaintiffs are "similarly situated" for purposes of FLSA collective action certification in two stages.  *Thiessen v. GE Capital Corp.*, 267 F.3d 1095, 1105 (10th Cir. 2001).  A court's initial certification comes at the notice stage, where courts use a fairly lenient standard to determine whether plaintiffs are similarly situated for purposes of sending notice to putative class members.  *Id.* at 1102.

---

[2]  As for liquidated damages, plaintiffs intend to move for default judgment and then seek to enforce the judgment against the Subcontractor defendants if they are able to locate them.  Docket No. 56 at 5-6.

In this case, an opt-in notice was approved by the magistrate judge.  Docket No. 46.

After discovery, a court makes a final class certification using a stricter standard.  *See*

*Thiessen*, 267 F.3d at 1102-03.  In order to approve a settlement prior to a final

collective action ruling, "the Court must make some final class certification finding."

*Whittington v. Taco Bell of Am., Inc.*, No. 10-cv-01884-KMT-MEH, 2013 WL 6022972,

at *2 (D. Colo. Nov. 13, 2013) (*citing Peterson v. Mortgage Sources, Corp.*, 2011 WL

3793963, at *4 (D. Kan. Aug. 25, 2011)).

        In deciding whether to certify a collective action, courts consider several factors,

including: (1) the disparate factual and employment settings of individual plaintiffs; (2)

various defenses available to defendant which appear to be individual to each plaintiff;

and (3) fairness and procedural considerations.[3]  *See Thiessen*, 267 F.3d at 1103.

        Here, the plaintiffs have not moved for final class certification and do not discuss

the factors laid out in *Thiessen*.  Docket No. 56.  Therefore, the Court will examine the

parties' motion to determine if the parties have provided sufficient information for "some

final class certification finding."  *Whittington*, 2013 WL 6022972, at *2.  As to the first

*Thiessen* factor regarding dissimilarity of individual plaintiffs, the Midwest defendants

contest only that they were joint employers of the Group 2 plaintiffs.  Docket No. 56 at

3.  The Midwest defendants do not contest that all plaintiffs worked at the same two

construction sites to install drywall.  *Id*. at 4.  Further, the nature of the FLSA violation is

the same as to each individual plaintiff – that defendants failed to pay statutorily

_____

        [3]  *Thiessen* lists a fourth factor, i.e. whether plaintiffs made the filings required by
the ADEA before instituting suit.  *See Thiessen*, 267 F.3d at 1103.  That factor does not
apply in FLSA cases.  *See Kaiser v. At The Beach, Inc.,* 2010 WL 5114729, at *3, n.6
(N.D. Okla. Dec. 9, 2010).

required premiums for hours worked in excess of forty hours per week.

Regarding the second *Thiessen* factor, while there are obvious and substantial similarities across all plaintiffs, the Group 1 and Group 2 plaintiffs are differently situated with respect to the Midwest defendants' defenses.  The Midwest defendants do not appear to raise any defenses as to the Group 1 plaintiffs; however, the Midwest defendants state that they were not joint employers of the Group 2 plaintiffs, and, in the absence of the proposed settlement, would not owe them anything.  Docket No. 56 at 4.

Considering the factors discussed in *Thiessen*, it is clear that the factual and employment settings are substantially similar for all plaintiffs.  However, there is a material distinction between the two groups of plaintiffs based on whether they were paid by the Midwest defendants or by subcontractors.  The Midwest defendants not only raise a distinct defense as to the Group 2 plaintiffs, but use that defense to justify a different payment structure under the settlement.  Where there are common facts among all plaintiffs, but differences make certification of a single class inappropriate, the court can certify subclasses.  *Renfro v. Spartan Computer Servs., Inc.*, 243 F.R.D. 431, 434 (D. Kan. 2007) (noting that it is appropriate to consider subclasses prior to final certification of an FLSA class); *Gjurovich v. Emmanuel's Marketplace, Inc.*, 282 F. Supp. 2d 91, 96 n.1 (S.D.N.Y. 2003) (noting that it is appropriate to consider decertification or division into subgroups prior to final certification).  Here, the Court finds that the parties appropriately recognize two subclasses in line with the division discussed in the parties' proposed settlement agreement.  Docket No 56 at 2-3.  Group 1 consists of the individuals employed directly by the Midwest defendants to work on drywall projects at the two relevant construction sites.  Group 2 consists of the

individuals employed by subcontractors to perform work at those same sites.

Based on the foregoing, the Court finds that the opt-in plaintiffs who would be covered by the proposed settlement are similarly situated and that the classes should be certified to proceed.

### B.  The Settlement

To approve the settlement agreement, the Court must find that (1) the litigation involves a bona fide dispute, (2) the proposed settlement is fair and equitable to all parties concerned, and (3) the proposed settlement contains a reasonable award of attorney's fees.  *Lynn's Food Stores*, 679 F.2d at 1354.

### 1.  Bona Fide Dispute

Parties requesting approval of an FLSA settlement must provide the Court with sufficient information to determine whether a bona fide dispute exists.  *Dees v. Hydradry, Inc.*, 706 F. Supp. 2d 1227, 1234 (M.D. Fla. 2010).  To meet this obligation, the parties must present: (1) a description of the nature of the dispute; (2) a description of the employer's business and the type of work performed by the employees; (3) the employer's reasons for disputing the employees' right to a minimum wage or overtime; (4) the employees' justification for the disputed wages; and (5) if the parties dispute the computation of wages owed, each party's estimate of the number of hours worked and the applicable wage.  *Collins v. Sanderson Farms, Inc.,* 568 F. Supp. 2d 714, 718 (E.D. La. 2008).  The mere existence of an adversarial lawsuit is not enough to satisfy the bona fide dispute requirement.  *Id*. at 719-20.

The plaintiffs in Group 2 argue that they performed work under the direction and

supervision of the Midwest defendants and used equipment and supplies provided by the Midwest defendants, rendering the Midwest defendants a joint employer under the FLSA.  Docket No. 56 at 5.  The Midwest defendants argue that they were not a joint employer of the Group 2 plaintiffs because they did not pay or supervise any of the plaintiffs in that group.  *Id.*  If the Midwest defendants were found by a court to have been a joint employer of the plaintiffs in Group 2, they would be obligated to pay both the unpaid overtime premiums and liquidated damages.  *See* 29 C.F.R. § 791.2.

In light of the parties' respective positions, the Court finds that a bona fide dispute exists.

### 2.  Fair and Reasonable

To be fair and reasonable, an FLSA settlement must provide adequate compensation to the employees and must not frustrate the FLSA policy rationales. Courts considering both individual and collective settlements under the FLSA turn to the factors for evaluating the fairness of a class action settlement.  *See, e.g.*, *Dail v. George A. Arab Inc.*, 391 F. Supp. 2d 1142, 1146 (M.D. Fla. 2005) (evaluating individual action); *Collins*, 568 F. Supp. 2d at 721 (evaluating collective action).  The Tenth Circuit considers the following factors when deciding whether to approve a class-action settlement under Fed. R. Civ. P. 23(e): (1) whether the parties fairly and honestly negotiated the settlement; (2) whether serious questions of law and fact exist which place the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted litigation; and (4) the judgment of the parties that the settlement is fair and reasonable.

*Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002).

The parties submit that they fairly and honestly negotiated the settlement.  Under the terms of the settlement agreement, the Midwest defendants agree to pay approximately $50,000, which consists of both settlement payments for distribution to the settlement class, as well as a negotiated award of attorney's fees and costs. Docket No. 56-1.  The parties negotiated the settlement at arm's length, and attorney's fees were negotiated separately from the award to the settlement plaintiffs.  As noted previously, the settlement is not a compromise as to Group 1 because the Midwest defendants have agreed to pay Group 1 both the overtime premiums owed and liquidated damages pursuant to the statute.  The settlement, however, is a compromise as to Group 2 because the Midwest defendants will pay only the overtime premiums.

The compromise is justified, according to plaintiffs, because there are serious questions of law and fact remaining in this case.  Docket No. 56 at 7.  The heart of the dispute between Group 2 and the Midwest defendants is whether the Midwest defendants were the joint employers of plaintiffs.  In regulations implementing the FLSA, the Department of Labor expressly contemplates that "[a] single individual may stand in the relation of an employee to two or more employers at the same time."  29 C.F.R. § 791.2(a).  Joint employment may exist "where the employers are not completely disassociated with respect to the employment of a particular employee and may be deemed to share control of the employee directly or indirectly, by reason of the fact that one employer controls, is controlled by, or is under common control with the other employer."  29 C.F.R. § 791.2(b)(3).  A joint employer is considered jointly and severally liable for compliance with the overtime provisions of FLSA.  *See* 29 U.S.C.

9

§ 207(a)(2)(C);  29 C.F.R. § 791.2.  Whether a joint employment relationship exists is a question of fact, and courts apply different tests in different situations.  *See Zachary v. Rescare Oklahoma, Inc.*, 471 F. Supp. 2d 1175, 1179 (N.D. Okla. 2006) (noting both the lack of 10th Circuit authority on joint employment and discussing four-, five-, six-, and seven-factor tests applied inside and outside the 10th Circuit when courts examine joint employment relationships); *see also Perez v. Pinon Mgmt., Inc.*, No. 12-cv-00653-MSK-MEH, 2013 WL 1149567, at *7 (D. Colo. Mar. 19, 2013) (denying a motion to dismiss because plaintiff stated that one employer controlled another, sufficiently alleging a joint employer relationship).  In each of these tests, courts consider the extent of control exercised by the various employers, but the precise balance of factors depends on the facts of each case.

It is clear that there is a factual question about whether the Midwest defendants were joint employers with the subcontractor defendants.  While there are factors supporting the Group 2 plaintiffs' position – including the Midwest defendants' oversight of the Glenarm and Monroe construction projects – there are also factors to support the Midwest defendants' position – including their lack of control over employment records and payment.

In addition, plaintiffs state that, based on the advice of counsel, they have concluded that the prospect and value of immediate recovery of the premium amounts owed outweighs the mere possibility of payment of the premiums and liquidated damages.  Counsel for plaintiffs has over 30 years of experience representing employees and has assisted his clients in determining whether the proposed settlement is fair and reasonable.  Docket No. 56-5.

The Court agrees that the settlement is fair and reasonable and reflects an adequate compromise that considers the risks of continuing with this litigation for each party.  There are issues of law and fact that, depending on their outcome, could result in a recovery for plaintiffs that is larger than this settlement or result in no recovery at all.  Moreover, plaintiffs and the Midwest defendants are represented by experienced counsel who believe that the settlement is fair and reasonable.

Next, the Court must determine whether the settlement agreement undermines the purpose of the FLSA, which is to protect employees' rights from employers who generally wield superior bargaining power.  To determine whether a settlement agreement complies with the FLSA, courts look at the following factors: (1) presence of other similarly situated employees; (2) a likelihood that plaintiffs' circumstances will recur; and (3) whether defendants had a history of non-compliance with the FLSA. *Dees*, 706 F. Supp. 2d at 1244.  The record shows that other similarly situated employees were given an opportunity to opt-in to this action, and several did.[4]  Docket No. 56-2.  In addition, there is no evidence in the record that defendants' alleged failure to comply with the FLSA represents a continuing violation or is part of widespread conduct.  Moreover, plaintiffs are no longer employed by the Midwest defendants. Docket 56 at 7.  Because the settlement agreement contains no confidentiality provision, the terms of the settlement are public; thus, this case would give notice to future plaintiffs of prior allegations of defendants' improper conduct.  *Dees*, 706 F.

---

[4]  As the subcontractor defendants did not participate in this lawsuit, plaintiffs were unable to obtain a list of individuals who worked for any of these subcontractors. Therefore they were unable to send an opt-in notice to those employees.  Docket No. 56 at 3 n.2.

Supp. 2d at 1244-45 (noting the importance of public access to settlement agreements in FLSA cases).

### 3. Attorney's Fees

The parties represent that plaintiffs' recovery was addressed independently of attorney's fees considerations and that their recovery was not influenced by the issue of attorney's fees.  Docket No. 56.  However, the Court must also examine whether the award of just over $17,000 in attorney's fees and costs is reasonable.  *See Silva v. Miller*, 307 F. App'x 349, 351-52 (11th Cir. 2009) (unpublished) (holding that contingency contract between counsel and plaintiff did not abrogate court's duty to review the reasonableness of legal fees in an FLSA settlement).  To determine the reasonableness of a fee request, a court must begin by calculating the "lodestar amount," which represents the number of hours reasonably expended multiplied by a reasonable hourly rate.  *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  The lodestar amount may be adjusted based upon several factors, including the amount in controversy, the length of time required to represent the client effectively, the complexity of the case, the value of the legal services to the client, awards in similar cases, and the degree of success achieved.  *See Tallitsch v. Child Support Servs., Inc*., 926 P.2d 143, 147 (Colo. App. 1996).  A party seeking an award of attorney's fees must establish the reasonableness of each dollar and each hour for which the party seeks an award.  *Jane L. v. Bangerter*, 61 F.3d 1505, 1510 (10th Cir. 1995).

Plaintiffs submit an affidavit from their attorney, Richard Rosenblatt, who states that his billing rate ranges between $200 and $250 per hour, unless he takes a case on

contingency, and that he has over 35 years of experience representing employees and unions.  Docket No. 56-5.  The parties agreed to an hourly rate of $225 per hour for purposes of the attorney fee determination.  Docket No. 56 at 9.

A "reasonable rate" is defined as the prevailing market rate in the relevant community for an attorney of similar experience.  *Guides, Ltd. v. Yarmouth Group Prop. Mgmt., Inc.*, 295 F.3d 1065, 1078 (10th Cir. 2002).  The party requesting fees bears "the burden of showing that the requested rates are in line with those prevailing in the community."  *Ellis v. Univ. of Kan. Med. Ctr.*, 163 F.3d 1186, 1203 (10th Cir. 1998).  In order to satisfy his burden, plaintiff must produce "satisfactory evidence – in addition to the attorney's own affidavits – that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation."  *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984).

The parties cite *Baker v. Vail Resorts Mgmt. Co.*, No. 13-cv-01649-PAB-CBS, 2014 WL 700096 (D. Colo. Feb. 24, 2014), to support plaintiffs' attorney's hourly rates. In *Baker*, the Court found that $280 per hour, rather than the $350 rate claimed by the attorneys, was a reasonable hourly rate in FLSA cases for attorneys with seven and fourteen years of experience, respectively.  *Id.* at *3.  In a more recent opinion, this Court found that $300 was a reasonable rate in FLSA cases for attorneys with 10 and 6 years of experience.  *Nicholas v. Double J Disposal, Inc.*, No. 14-CV-01158-PAB-GPG, 2016 WL 559185, at *4 (D. Colo. Feb. 12, 2016).

Based on the above-cited cases, the Court finds that the proposed rate of $225 per hour used by the parties to determine the attorney fees in this case is appropriate.

Mr. Rosenblatt indicates that he has spent approximately 76.7 hours on this case and submitted an itemized list of the work he completed.  Docket No. 56-5.  The attorneys in *Double J. Disposal* similarly spent roughly 70 hours on their case.  2016 WL 559185, at *4.  The Court finds that Mr. Rosenblatt expended a reasonable amount of time to complete this settlement.  The resulting award for plaintiffs is substantial, and Mr. Rosenblatt expended significant time organizing information about a number of plaintiffs, helping other similarly situated plaintiffs to opt-in to the settlement, and working to settle this dispute.

The lodestar amount in this case is therefore $17,257.50.

Considering plaintiffs' counsel's hourly rate and the lodestar amount, the Court finds that the parties' attorney's fee request of $17,257.00 is reasonable.  Docket 56-1 at 4.  The parties also agree to reimburse Mr. Rosenblatt $600 for the costs of this litigation, which is also reasonable.  Docket No. 56-5.

Considering plaintiff's counsel's hourly rate and the lodestar amount, the Court finds that the parties' attorney's fee request is reasonable.

For the foregoing reasons, it is

**ORDERED** that the Joint Motion for Court Approval of Settlement [Docket No. 56] is **GRANTED**.

DATED December 13, 2016.

BY THE COURT:


 s/Philip A. Brimmer

PHILIP A. BRIMMER
United States District Judge